UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LORI DOW,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-493
Dlott, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in June 2009, alleging disability since June 1, 2006, due to fibromyalgia, depression, disc/back problems and anxiety. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) Deborah Smith. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On November 14, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease of the back and obesity. Mentally, she has depression, anxiety, somatic disorder, history of marijuana abuse (suspect ongoing use) and a personality disorder, impairments that are "severe" when considered in combination (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the [plaintiff] is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday. As to postural limitations, the [plaintiff] can never climb ladders, ropes, or scaffolds. She can occasionally climb stairs and ramps, balance, kneel, crouch, crawl, and stoop. However, the [plaintiff]'s work must avoid exposure to hazards such as dangerous moving machinery and unprotected heights due to her gait and balance issues. Additionally, to account for the

[plaintiff]'s mental impairments and/or any effects of pain, the [plaintiff] is limited to simple tasks in a work setting where there is minimal social interaction, no fast pace, and no strict production standards.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965.[1]

7. The [plaintiff] was born [in] . . . 1966 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The [plaintiff] has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, the [plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 1, 2006, through the date of [the ALJ's] decision (20 CFR 404.1520(g)) and 416.920(g)).

(Tr. 30-43).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[1] Plaintiff's past relevant work was as a Licensed Practical Nurse. (Tr. 41).
[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the unskilled light jobs of office helper (470 jobs in the local economy and 85,620 jobs in the national economy), finishing inspector (3,580 jobs in the local economy and 410,750 jobs in the national economy), and pre-assembler (1,560 jobs in the local economy and 839,000 jobs in the national economy) and the unskilled sedentary job of surveillance systems monitor (2,400 jobs in the local economy and 79,280 jobs in the national economy).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

The medical findings and opinions of record have been adequately summarized in the plaintiff's Statement of Errors (Doc. 9 at 2-5) and in the ALJ's decision (Tr. 30-41) and will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision.

5

On appeal, plaintiff argues that: (1) the ALJ erred in finding that plaintiff's severe back impairment does not meet or equal Listing 1.04(A); (2) the ALJ erred in giving greater weight to the opinion of non-examining state agency psychologist Dr. Irma Johnston, Psy.D., than the ALJ gave consultative examining psychologist Dr. Stephen Fritsch, Psy.D., and plaintiff's treating source; and (3) the ALJ erred in assessing plaintiff's credibility. (Doc. 9).

**1. The ALJ did not err by finding that plaintiff's severe back impairment did not meet or equal Listing 1.04(A); however, the ALJ erred in formulating an RFC for a restricted range of light work.**

Plaintiff alleges that the ALJ erred by finding that her severe back impairment does not meet or equal Listing 1.04(A) for disorders of the spine, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Listing 1.04(A) states:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

(*Id.*). Thus, to satisfy Listing 1.04(A), plaintiff must demonstrate: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness); (4) sensory or reflex loss; and (5) positive straight leg raise test, in both the sitting and supine positions. In addition, the regulations require that the abnormal findings must be established over a period of time: "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D.

The ALJ considered Listing 1.04(A) but found that it was not met because the record did not demonstrate "compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: (a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and positive straight-leg raising[.]" (Tr. 32). Plaintiff alleges that the ALJ's finding is not substantially supported because the ALJ failed to consider relevant objective findings. Plaintiff notes that the ALJ acknowledged two MRIs and some of the findings from those MRIs: (1) a March 2009 MRI showing "prominent left paracentral disc herniation at L4-L5 resulting in moderate to severe canal stenosis with possible impingement at the entrance of the left-sided neural foramen" (Tr. 36, citing Tr. 280, 381, 463); and (2) a June 2009 MRI showing apparent slightly increased disc herniation. (Tr. 36, citing Tr. 307). However, plaintiff alleges that the ALJ ignored a finding of "severe nerve root compression of the left L5 nerve root secondary to a significant disc herniation at L4-5" made in connection with the June 2009 MRI. (Doc. 9 at 2, citing Tr. 281). Plaintiff also generally asserts that physical examinations document pain, decreased range of motion, muscle weakness, and sensory loss. (Doc. 9 at 3, citing Tr. 283-88, 330, 336, 676).

Plaintiff has failed to show that the ALJ's Listing finding lacks substantial support. Plaintiff correctly notes that the ALJ failed to acknowledge the June 2009 MRI impression of "[s]ignificant disc herniation at L4-L5 [which] appears similar to slightly increased, with severe compression of the left L5 nerve root." (Tr. 281). However, the presence of severe nerve root compression is insufficient in and of itself to satisfy the Listing. Plaintiff is required to produce evidence that all of the criteria of Listing 1.04(A) are satisfied, which she failed to do. Plaintiff

points to treatment notes documenting some of the requisite 1.04(A) findings: "limited" lumbar flexion and extension and decreased range of motion (4/5) of the left hip and hamstring reported on June 10, 2009 (Tr. 283-288); decreased sensation, especially in the L4 and S1 dermatome, made on February 19, 2009 and March 18, 2009 (Tr. 330, 336) and decreased sensation of the right and left legs made on November 12, 2010 (Tr. 676); and diffuse weakness in the lower extremities due to pain reported on November 12, 2010 (*Id.*). (Doc. 9 at 3). These sporadic findings do not demonstrate that plaintiff's symptoms persisted over a period of time as required by § 1.00D. Nor has plaintiff directed the Court to any positive straight leg raise test results. Thus, the evidence cited by plaintiff fails to establish persistent abnormal strength or sensation findings as required under Listing 1.04(A).

For these reasons, plaintiff has not shown that taken as a whole, the ALJ's finding that her severe back impairment does not meet or equal the requirements of Listing 1.04(A) lacks substantial support. The ALJ properly considered plaintiff's severe back impairment under the criteria applicable to a spinal disorder and reasonably determined that plaintiff does not meet or equal the Listing. The ALJ's finding that plaintiff does not satisfy the § 1.04(A) criteria for disorders of the spine is supported by substantial evidence.

Plaintiff alleges that even if the ALJ's finding that her back impairment does not meet or equal Listing 1.04(A) is substantially supported, the ALJ's RFC finding is not supported by the evidence; rather, plaintiff alleges that her severe nerve root compression would preclude her from performing light work. (Doc. 9 at 3). The Commissioner contends that plaintiff did not develop this argument in her Statement of Errors and it should not be considered by the Court. (Doc. 14 at 6). The Commissioner further contends that in any event, plaintiff's argument is unavailing

8

because it fails to address the medical and non-medical evidence considered by the ALJ in rendering the RFC finding. (Doc. 14 at 6). In reply, plaintiff alleges that the ALJ erred by failing to address how her use of a walker, which the Commissioner acknowledges was noted by the ALJ in her decision, would impact plaintiff's ability to stand/walk six hours a day. (Doc. 15 at 2-3).

Plaintiff has adequately raised the issue of the ALJ's failure to account for her use of a walker when formulating the RFC. Upon review of the record, the Court finds that the ALJ's decision that plaintiff retained the RFC to perform a restricted range of light work, despite her use of a walker, is not supported by substantial evidence. Where the use of a walker is part of the record, the ALJ is obligated to consider whether this factor would have an impact on the plaintiff's RFC. *See Penn v. Astrue*, No. 2:09-CV-00169, 2010 WL 547491, at *6 (S.D. Ohio Feb. 12, 2010) ("The consistent reference to the use of a cane (or a walker) . . . is enough to trigger an obligation on the part of the Commissioner to decide if such use is medically necessary and, if so, to have included that factor in the RFC analysis."). The ALJ acknowledged in her decision that plaintiff testified she used walker to help her maintain her balance when ambulating, and the ALJ acknowledged that plaintiff had undergone epidural injections with little, if any relief, noted. (Tr. 39, citing 294; *see also* Tr. 37, where the ALJ stated that plaintiff "uses a walker, however, it does not appear that this assistive device is always necessary."). The ALJ found "[t]his lack of more extensive treatment is inconsistent with the existence of a disabling impairment" and she stated she had accounted for plaintiff's "treatment other than medication" in formulating the RFC, which imposed the following limitations:

> [Plaintiff ] is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for about 6 hours in an 8-hour workday and

9

>sit for about 6 hours in an 8-hour workday. As to postural limitations, the [plaintiff] can never climb ladders, ropes, or scaffolds. She can occasionally climb stairs and ramps, balance, kneel, crouch, crawl, and stoop. However, the [plaintiff]'s work must avoid exposure to hazards such as dangerous moving machinery and unprotected heights due to her gait and balance issues. . . .

(Tr. 34). However, the ALJ gave no indication that she specifically considered how plaintiff's use of a walker would impact her ability to perform the lifting/carrying and standing/walking requirements of light work.

Nor did the ALJ fulfill her obligation to consider whether plaintiff's use of a walker would impact plaintiff's ability to perform the jobs identified by the VE. *See Penn*, No. 2:09-CV-00169, 2010 WL 547491, at *6 (where use of a walker or cane is part of the record, the ALJ is obligated to consider impact of the use on the jobs identified by the VE). The VE was questioned as to how plaintiff's use of a walker would impact her ability to perform the following jobs identified by the VE: finish inspector and pre-assembler, which the VE characterized as light factory jobs, and office helper and surveillance system monitor, which the VE characterized as sedentary positions. (Tr. 83-84). The VE testified that plaintiff's use of a walker "would eliminate a number of factory jobs, would not let her get into a factory." (Tr. 85). The ALJ nonetheless found that plaintiff could perform the factory jobs of finishing inspector and pre-assembler without discussing the impact of plaintiff's use of walker on her ability to perform these jobs. (Tr. 42-43). The ALJ's finding is inconsistent with the VE's testimony and therefore is not substantially supported by the record. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (ALJ can satisfy burden to show that the claimant has the vocational qualifications to perform specific jobs by relying on the testimony of a VE in response to a hypothetical question, "but only if the question accurately portrays [the claimant's] individual

physical and mental impairments."); *Penn*, No. 2:09-CV-00169, 2010 WL 547491, at *6 ("Because vocational testimony is needed to determine if this factor [use of a cane or walker] would have an impact on the sedentary jobs identified by the vocational expert, this failure [to consider such use] cannot be considered harmless.").

The ALJ's finding that plaintiff could perform the job of office helper likewise is not supported by the VE's testimony. The VE testified that he did not think plaintiff's use of a walker would impact her ability to perform the job of office helper, DOT 239.567-010. (Tr. 85). However, the VE identified this position as a sedentary position. (Tr. 83). The ALJ in her decision characterized the job as a light position in accordance with the DOT and purportedly in accordance with the VE's testimony, which the ALJ found to be consistent with the DOT.[3] The ALJ did not acknowledge that the VE characterized the position as a sedentary position. Given this discrepancy, the VE's testimony that he thought plaintiff could perform the exertional requirements of "sedentary" office helper despite her use of a walker does not support the ALJ's finding that plaintiff could perform the more demanding exertional requirements of "light" office helper.[4]

Finally, the VE did not specifically address whether plaintiff's use of a walker would impact her ability to perform the job of surveillance system monitor. (Tr. 42). However, the VE indicated that the walking limitations plaintiff testified about would make it difficult for her to

---

[3] The DOT characterizes this job as a light level job. *See* http://www.occupationalinfor.org/23/239567010.html.
[4] The Court notes that the VE also gave seemingly conflicting testimony on the non-exertional requirements of the office helper position. In response to questioning by plaintiff's attorney, the VE testified that the office helper position would "[p]robably" require plaintiff to "interact with people on a significant basis." (Tr. 85). On follow-up questioning by the ALJ, the VE testified that plaintiff could perform the job of office helper "if she's required to do minimal social interaction." (Tr. 87). It is unclear how an individual who is restricted to "minimal social interaction" would be able to perform a job that requires interaction with people on a "significant basis."

even get to a job so as to be able to perform the work. (Tr. 85). Given this testimony and the ALJ's apparent acceptance of plaintiff's need to use a walker to maintain her balance while ambulating[5], it was incumbent upon the ALJ to address how the walker restriction would impact plaintiff's ability to perform any type of work on a sustained basis, including the sedentary jobs identified by the VE. *See Penn*, No. 2:09-CV-00169, 2010 WL 547491, at *6. The ALJ failed to do so, and her decision therefore is not supported by substantial evidence.

Thus, the ALJ did not err by finding that plaintiff's severe back impairment does not meet or equal Listing 1.04(A). However, the ALJ erred by failing to account for plaintiff's need to use a walker in fashioning the RFC for a restricted range of light work and in determining there are a significant number of jobs in the national economy that plaintiff could perform given that RFC. *See Ealy*, 594 F.3d at 512; *Penn*, No. 2:09-CV-00169, 2010 WL 547491, at *6. Plaintiff's first assignment of error should be sustained on this basis.

### 2. The ALJ erred in weighing the psychological opinion evidence.

Plaintiff alleges as her second assignment of error that the ALJ erred in giving greater weight to the opinion of the non-examining state agency psychologist, Dr. Irma Johnston, Psy.D., than to the consultative examining psychologist, Dr. Stephen Fritsch, Psy.D., and plaintiff's treating source.[6]

---

[5] The ALJ's decision states, "The claimant uses a walker, however, it does not appear that this assistive device is *always* necessary." (Tr. 37) (emphasis added). This statement implies that plaintiff is required to use a walker some of the time. However, the ALJ did not provide any specifics or make a finding regarding how frequently plaintiff must use a walker and how her walker use would impact plaintiff's ability to perform the jobs identified by the VE.
[6] Plaintiff does not identify any treating source who rendered a mental health assessment, and she does not direct the Court to any such opinion in the record. Nor is the Court aware of a mental health assessment issued by a treating source. Instead, plaintiff generally references treatment records generated by a psychiatrist and mental health therapist, which she asserts document the severity of her mental condition. (Doc. 9 at 4, citing Tr. 1099-1131, 1139-61). Such treatment records do not qualify as "medical opinions" under the Social Security regulations and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)." *Bowen*, 478 F.3d at 749.

Under the Social Security regulations, the opinion of a non-treating but examining source is generally entitled to more weight than the opinion of a non-examining source. *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)(1)[7]; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). A non-treating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson*, 378 F.3d at 544. The regulations further provide that "[s]tate agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation," and whose findings and opinions the ALJ "must consider . . . as opinion evidence." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

The record includes mental RFC assessments provided by two mental health sources: consultative examining psychologist Dr. Fritsch (Tr. 422-426), and state agency non-examining psychologist Dr. Johnston (Tr. 445-61). Dr. Fritsch examined plaintiff on August 7, 2009. He diagnosed plaintiff with a pain disorder associated with "both psychological factors and medical

---

[7] The regulations which govern the weighing of medical source opinions were previously found at 20 C.F.R. §§ 404.1527(d), 416.927(d). The regulations were amended effective March 26, 2012, and the provisions for weighing medical source opinions are now found at 20 C.F.R. §§ 404.1527(c), 416.927(c).

condition"; mood disorder NOS; and panic disorder with agoraphobia. (Tr. 426). He assigned a Global Assessment of Functioning (GAF) score of 42.[7] (*Id.*). Dr. Fritsch concluded that plaintiff's ability to understand and follow instructions is not impaired; her ability to maintain attention, concentration, persistence, and pace as to simple repetitive tasks is moderately impaired; her ability to relate to others, including fellow workers and supervisors, is moderately impaired; and her ability to withstand the stress and pressures of day-to-day work activity is markedly impaired. (Tr. 425-26).

Dr. Johnston reviewed the evidence of record and completed a Psychiatric Review Technique and mental RFC assessment in September 2009. (Tr. 445-461). Dr. Johnston expressly declined to adopt Dr. Fritsch's conclusion that plaintiff's ability to withstand the stress and pressures of daily work activity is markedly impaired. (Tr. 461). Dr. Johnston opined that plaintiff has mild restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 455).

Because the record did not include a mental RFC assessment by a treating provider, the ALJ was required to weigh the opinions of the examining and non-examining mental health sources in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c). *Ealy*, 594 F.3d at 514. The ALJ failed to comply with the regulations and the governing law in this

---

[7] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. Individuals with scores of 41 to 50 are classified as having "serious symptoms or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). . . ." *Id.*

regard. The ALJ stated that she was giving "great weight" to the opinion of the state agency reviewing psychologist, Dr. Johnston. (Tr. 40). The ALJ then reiterated Dr. Johnston's findings that plaintiff is moderately impaired in her ability to maintain concentration, persistence and pace; she is moderately impaired in her ability to interact appropriately with others, including co-workers and supervisors; she is able to understand, follow and carry out directions of simple repetitive tasks; and she is limited due to her anxiety and does not handle stress well. (Tr. 41, citing Tr. 459, 461). The ALJ stated that she agreed with Dr. Johnston's opinion that plaintiff retains the capacity to carry out "simple to moderate tasks in a work setting where there is minimal social interaction, no fast pace, and no strict production standards." (Tr. 41). However, the ALJ made no mention of any of the regulatory factors when deciding the weight to afford Dr. Johnston's opinion, and she did not discuss whether Dr. Johnston's opinions were consistent with the evidence of record. Therefore, the Court is unable to discern the ALJ's evidentiary basis for giving more weight to the non-examining psychologist's opinion.

Further, the ALJ made no mention whatsoever in her decision of the opinion of the consultative examining psychologist, Dr. Fritsch. The Commissioner argues this was not error because the ALJ properly discussed the objective evidence in her decision (Doc. 14 at 11), and she was not required to "cite and discuss every piece of evidence in the record[.]" (*Id.* at 8, citing *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (*Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Commissioner's argument ignores the fact that the evidence the ALJ failed to discuss was a medical source opinion, which the ALJ was *required* to

15

evaluate in accordance with the regulatory factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). *See also* 20 C.F.R. 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). Further, *Simons* is inapposite. In *Simons*, the Sixth Circuit found that the ALJ did not err by failing to discuss a treating physician's diagnosis, noting that although the issue was whether there was substantial evidence in the record demonstrating that plaintiff retained the RFC to work, the physician had not provided an RFC assessment but had merely reiterated in his report plaintiff's subjective complaints of pain, his diagnosis, and the plan for treatment. *Simons*, 114 F. App'x at 733-34. In contrast to *Simons*, the evidence which the ALJ ignored here is a mental RFC assessment which goes directly to the issue of whether there was substantial evidence in the record showing that plaintiff retained the mental RFC to work.

Thus, the ALJ's decision to afford great weight to the opinion of the non-examining state agency psychologist, Dr. Johnston, lacks substantial support. The ALJ did not weigh the opinion in accordance with the regulatory factors. Further, the ALJ ignored the opinion of the consultative examining psychologist, Dr. Fritsch, whose finding of marked impairment in plaintiff's ability to withstand the stress and pressures of day-to-day work activity is in direct conflict with Dr. Johnston's assessment. Plaintiff's second assignment of error should be sustained.

### 3. The Court need not address plaintiff's credibility argument.

Plaintiff alleges as her third assignment of error that the ALJ erred by relying upon her former marijuana use to discount her credibility. Plaintiff alleges that a report of marijuana use

she made during an initial office visit to University Pain Management Center on April 7, 2009, was apparently "cut and pasted" into every subsequent office visit report and that the records seem to be inaccurate in this respect. (Doc. 9 at 6). Plaintiff alleges she has undergone several random drug screens since beginning treatment at the Pain Center in 2009, none of which have been positive for marijuana. (*Id.*). Defendant contends that the ALJ cited treatment notes in support of his finding on this point and that even if the ALJ erred in relying on the reports of plaintiff's marijuana use, the error was harmless because the ALJ considered several other factors in assessing plaintiff's credibility. (Doc. 14).

It is not necessary to address plaintiff's credibility argument because on remand the ALJ's consideration of Dr. Fritsch's assessment of plaintiff's mental impairments and RFC may impact the remainder of the ALJ's sequential evaluation, including the assessment of plaintiff's credibility. *See Trent v. Astrue*, No. 1:09cv2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's third assignment of error had merit, the result would be the same, *i.e.*, a remand for further proceedings and not an outright reversal for benefits as discussed below. The Court therefore declines to address plaintiff's third assignment of error.

### III. Conclusion

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Reversal and remand are required for further consideration of the

17

evidence pertaining to plaintiff's use of a walker and consideration of the medical opinions of record. On remand, the ALJ should elicit additional vocational expert testimony as warranted.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be REVERSED and REMANDED for further proceedings pursuant to 42 U.S.C. § 405(g).

Date: 7/18/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LORI DOW,
    Plaintiff,

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-493
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).